My name is Jason Burton, and with my co-counsel Austin Bird, we represent the plaintiff appellant in this matter, James Gary Moskos. I've reserved 16 minutes of the information for my opening and four for rebuttal. There are two issues that are on appeal today for the court. One is whether the court erred in deciding disputed issues of fact and determining the credibility of the witnesses and granting a Rule 50A motion related to the plaintiff's claims for Eighth Amendment and Fourteenth Amendment constitutional violations, which is subject to a de novo standard. The second issue on appeal is whether the court erred by excluding certain evidence related to a grievance process and grievance documents filed by Mr. Moskos in the wake of a use of force incident that happened on August 3rd of 20, on August 2nd of 2013. As we will discuss in a minute, it's our belief that the court, the district court, erred in granting the Rule 50A motion by usurping the province of the jury, deciding material facts, and assessing the credibility and weight to be given to certain testimony, and that that is a reversible error that should remand this matter back to the district court in the Eastern District of North Carolina. The gravamen of Mr. Moskos' claims relate to one central claim theory, that he was unlawfully beaten by three correctional officers at the second to 2013, and that the correctional staff, including the officer who assaulted him, engaged in a pattern of fabricating evidence to siphon or to shush Mr. Moskos and his complaints related to what occurred. There are certain facts in this case that are agreed, and those are the facts giving rise to the altercation that occurred on August 2nd, 2013. Everyone acknowledges that it was about 105 degrees in Lumberton, North Carolina on the date this incident occurred. Both sides acknowledge that Mr. Moskos approached Defendant Hardy, requested Hardy's permission to cross over to another dorm to fill up a cold water cooler because the water was broken in dormitory E where Mr. Moskos was housed. Both parties agree that Officer Hardy initially refused that request, which prompted Mr. Moskos to threaten to file a grievance against Officer Hardy, which he discussed with Officer Butler. In the discussion with Officer Butler, Officer Butler gave Mr. Moskos permission to cross over the dorms and fill up his water cooler. That's where there becomes a genuine dispute as to the facts giving rise to the altercation that occurred. Based on Mr. Moskos' version of events, he crossed over, filled the cooler with ice water, and as he got back to his dorm, he encountered no other than Officer Hardy. Officer Hardy was upset by the idea that he had denied permission to Mr. Moskos, and ultimately an altercation ensued as a result of that. Based on Mr. Moskos' testimony and the evidence presented at trial, he was struck for no apparent reason at all by Officer Hardy, was assaulted by Officer Hardy until Officer Horn arrived. Officer Horn deployed pepper spray twice on Mr. Moskos, struck him in the head with the can of mace, and a third officer came to join the assault. Officer Hardy and Officer Horn, on the other hand, contend that Mr. Moskos was the aggressor in the altercation, that Mr. Moskos assaulted Officer Hardy, which led to Officer Horn responding to the scene. Neither side had been able to identify the third guard that was required prison staff to make that determination. Mr. Moskos contends that following this use of force incident, that there was a delay in decontaminating the pepper spray, there was a delay in sending him out for outside medical treatment, and once he returned to Lemberton Correctional Facility, he was thrown in administrative segregation under conditions that we believe violate the Eighth Amendment for a period of approximately 21 days before being transferred to a different prison facility. You've thrown a lot at us, but I'm not sure exactly what it is that you're contesting. Was it the use of pepper spray? Your Honor, it is the sum total of the events that led to Mr. Moskos' assault on August the 22nd, 2013. We start with the proposition that Mr. Moskos was following an order or following permission that was given to him by Defendant Butler when he came back and encountered Officer Hardy. Officer Hardy, with what we believe to be malice intent, perpetrated an assault on Mr. Moskos. Not only was the assault perpetrated... Wasn't all that resolved by a jury? The state law assault and battery claims, Your Honor... All those facts were resolved by a jury. Your Honor, we would disagree with that contention. Well, how could the jury... If the jury agreed with your client's rendition of the facts, they wouldn't have found for the defendants. They apparently believe the guard's rendition of the facts and ruled for the defendants. Now, we wouldn't be in a position to reverse the jury's verdict, would we? Your Honor, what we're requesting, and this kind of goes to the second issue on appeal, which is the court's decision not to admit evidence that we believe relates to the grievance filed by Mr. Moskos, giving additional factual information about the cover-up. We stop on the first, because Judge Niemeyer has asked a very pertinent question. What is it that you are complaining about? Is it the jury's verdict? We're complaining about rulings made by the district court judge that we believe improperly influenced the jury's verdict. So it's not only that the court refused to allow us to present jury or made comments in open court to the jury that the grievance was entirely irrelevant to the assault and battery that occurred on August the 2nd of 2013. But nothing... No, that ruling doesn't deny your client from stating his rendition of the facts. In other words, the grievance process, he presumably stated what happened, but he was entitled in court to state what he thought happened and have the jury assess that. That is correct, Your Honor. And Mr. Moskos was allowed to testify on those issues. What the court prevented us from being able to do was to cross-examine Superintendent McRae on the grievance process on what he did to investigate the allegations that were raised by... What's your theory on that? I thought you were trying the assault case, not the grievance process. Your Honor, we alleged a 14th Amendment violation arising out of the disciplinary process and the grievance process that ensued. Before you go there, what is the... I don't understand the attack on the grievance process. The grievance process has not been invalidated, has it been? Your Honor, it's not invalidated. It's not that the grievance process has been invalidated. It's that the court made comments in front of the jury that the grievance process was irrelevant to Mr. Moskos' substantive claims. We disagree with that content. The grievance filed sets forth a history that is consistent... You're not attacking the grievance process, or are you? Your Honor, it's our belief that the way that the disciplinary action and the grievance process was handled violated Mr. Moskos' due grievance process. Maybe it's a collateral attack or whatever, but isn't that an attack on the grievance process? It's an attack on the entire process by which we contend that the correctional officers orchestrated evidence to support an unlawful attack that they perpetrated on Mr. Moskos. So the defense in their briefing cites to the idea that... Are you attacking the grievance process per se? We are not attacking, quote, the adequacy of the investigation that was done. We're attacking the concept that we believe and we believe the evidence presented at trial demonstrated... You're attacking the fact that you don't think the grievance process followed due process? That is correct, Your Honor. We believe that there were correctional officers that conspired together to fabricate a story about... Okay, but if that's what you're after, how do you go after the grievance process in view of the Edwards case? So, Your Honor, when we look back at the position that the defense has taken in the briefing here, they raised the Heck case, they raised the Edwards case for the proposition that it's impermissible to attack the grievance process through a 1983 claim when a finding in favor of the injured party on the 1983 claim would necessarily invalidate the charges or conviction or punishment that the inmate has received. The Dixon case from the 11th Circuit is the most on connection with this incident was charged with three disciplinary actions. Isn't this, in fact, an attack on the grievance process? It's an attack on the due process rights or the failure of the grievance process to respect Mr. Moskos' protected due process rights. Well, how is that consistent with Edwards? I mean, it seems to me you're trying to sort of get at the grievance process by a roundabout way, but Edwards says when you're bringing a 1983 suit, and you were bringing a 1983 suit, that if the grievance process hasn't been invalidated, it's not open to attack. And the reason there is you're trying to sort of smuggle it into this 1983 suit by virtue of an excessive force claim. But the basic point here is that so often these attacks on the grievance process are dealing with the loss of good time credit. And to the extent that that impacts the duration of one's confinement, it's a habeas action and not a 1983 action. I realize you're just saying, no, this is all ancillary to our attack on the excessive force claim and the grievance process is simply an evidentiary item in that we raise in conjunction with the excessive force claim. But why wasn't the district court correct in saying that Edwards presents a hurdle for you? The reason, Your Honor, would be the 11th Circuit's decision in the Dixon versus Hodges case. Well, what about the Supreme Court's decision? Our view of Heck and Edwards is that they stand for the proposition that a 1983 claim is barred if a finding in favor of the injured party invalidates or necessarily invalidates the punishment or conviction associated with that offense. Here, we're not dealing with that at all. There were three offenses that Mr. Moskos was charged with. One, assaulting an officer, which he admitted in open court that he fought back after being struck. Which provides an independent basis for that disciplinary finding to stand. Use of profane language, which he admitted from the witness stand. Yeah, but this doesn't help answering the question. I've been waiting, I think Judge Wilkins has asked you about three times now, why isn't Edwards applicable to a challenge to the grievance process? The simple response, Your Honor, is that it does not invalidate the underlying charges or as a result of the charges that he received. But then you can't challenge it if it hasn't been invalidated. My reading of the case law is different from that, Your Honor. My reading of the case law is that- Not the case law, Edwards. Stick with Edwards. What's your take on Edwards? Why doesn't Edwards preclude the 14th Amendment attack? Our position is that it doesn't preclude the 14th Amendment attack because this 14th Amendment claim does nothing to invalidate the sentence or the disciplinary action that Mr. Moskos received. Our theory relates to what led to the grievance process, the failure to get- Basically, you're saying the grievance process was invalid because the state advanced fabricated evidence, deliberately fabricated evidence. That is correct. But the jury found to the contrary, didn't they? The jury never decided that issue, Your Honor. They believed the officers and found the truthfulness of their statements. The court made that determination, we believe, on the Rule 50A motion and made that determination by making comments on the record without giving a limiting instruction to the jury to disregard his comments about the grievance process. What you're saying is that the attacks on the grievance process are perfectly okay so long as they're raised in conjunction with another claim. They say all we need to do is to sort of attach the attack to the grievance process as ancillary to another claim and thereby the Supreme Court's ruling in Edwards is of no effect. I just wonder why that isn't a circumvention of what the Supreme Court wanted. I read Edwards to say, well, you're talking about a 1983 claim and where the disciplinary proceeding, the disciplinary ruling has not been invalidated, that it is immune from attack. If you don't like the disciplinary proceeding, go in the final 2254 or whatever and talk about, you know, the fact of duration of confinement. But in this case, if we agreed with you, every grievance process would be open to worried about circling around Edwards. Your Honor, my time is getting very near. May I respond to your question? Well, why don't you respond to it with the time that you've reserved for rebuttal. Would that be okay? That would be fine, Your Honor. Thank you. All right. Okay. Thank you. And Ms. Narasimhan, we're delighted to hear from you. Good morning, Your Honors. May it please the Court, my name is Tripriya Narasimhan and I represent the state defendants in this action. I'm happy to go through each of the claims that two issues that my friend on the other side noted in his opening and that the Court seemed interested in first with your indulgence. On the issue of the application of Edwards versus Valasok, my friend on the other side seems to argue today that, as Judge Wilkinson alluded to, attacks on the grievance procedures are admissible or acceptable if they are attacked, if they're attached to another claim. And that's precisely what the Supreme Court in Edwards said was absolutely wrong. So just to take the Court through some of the factual similarities between Edwards and this case, in Edwards, a person was housed in a correctional facility and alleged that a hearing officer at his disciplinary hearing concealed exculpatory witness statements and refused to ask specified questions of requested witnesses. The individual claimed that the cause for this exclusion was the deceit and bias of the hearing officer. And the Supreme Court held that allegations of deceit and bias and impropriety in prison disciplinary proceedings were collateral attacks on the validity of the proceedings themselves and could not move forward under a 1983 claim just because they were recharacterized as a 1983 claim. But they're saying that all that goes out the window because we're not really the use of excessive force and the disagreements and disillusionment with the disciplinary proceedings are simply an evidentiary item which is brought to bear on an excessive force claim. I mean, that's their argument. And what do you say with regard to it? The state's view is that Edwards only precludes Mr. Moskos' due process claims. So in other words, the assault, battery, and excessive force claims could move forward as they did and went to the jury and the jury returned a no liability verdict. So that was correct. But his due process claims which attack the validity of the prison disciplinary process is, under Edwards, a collateral attack on the prison disciplinary proceedings. So it is those due process claims that can't move forward under Edwards. How does he make an attack on that? How does he properly attack the grievance process? To properly attack the grievance process, he can either move for alternative relief in state court and institute sort of a state habeas-like proceeding in state court, or he can move forward in understate or federal habeas claims. But that would be the way to... Well, we're not in the context of habeas. We're in context of where he claims that a grievance procedure because of his conduct while in prison was unconstitutionally conducted. Yes, Eugene Meyer, what I should have said was he first needs to reverse the findings of his prison disciplinary proceeding before he can bring his 1983 claim here. And so in order to do that, he needs to first institute a habeas or an MAR proceeding in state court to reverse the prison disciplinary findings before being able to bring this claim. But it's our view that even if he did that, of course, his claims here fail as a matter of law on the record. So even if you were... So I'm factually clear on what transpired here. There were disciplinary, there was a disciplinary action brought against Mr. Moscos because of the altercation. And there were judgments given with respect to his finding of guilt on that. Then he separately filed a grievance. Is that correct? Now, was the grievance to the conduct of the disciplinary proceeding or was it with regard to other actions? It appears... Yes, it appears to be a combination of both. So the grievance procedure alleged or the grievance document alleged that he was assaulted by the officers and that the subsequent investigative procedures were lacking. So it challenged both aspects of the process. But was he using the grievance to challenge the result of the disciplinary proceeding? It appears as though from the face of the grievance document that he was challenging the validity of the process and therefore, as an extension, the fact that he lost good time credits and was moved to a maximum security facility. So he was challenging the result because it was invalid in his view. Because the invalid proceedings that... Not to my knowledge and, you know, for what the documents in the record. If the sanction was loss of good time credits, then it would be a habeas proceeding, wouldn't it? Yes, Your Honor. He didn't allow one, right? Yes, Your Honor. As far as I'm aware, no, he did not. I gather your view is that Edwards says that a 1983 suit simply can't be the vehicle for an attack on the grievance proceeding. And the language in Edwards is really quite emphatic about not allowing... It says the state prisoner's 1983 suit is barred, absent prior validation, no matter the relief sought, damages or equitable relief, no matter the targets of the prisoner's suit, state conduct leading to conviction or internal prison proceedings. If success in that action would necessarily demonstrate the invalidity of confinement or its duration. And you're saying that this is really an effort to just by introducing it as some kind of evidentiary matter, you're really going after the validity of its conclusions. Far be it for me to take Justice Scalia's words out of his mouth, but yes, the case makes quite clear that challenging the process of getting to the final resolution of the disciplinary proceeding is in fact a challenge to the present disciplinary proceeding. So if we determine that Edwards applies here, other than the claims that then went to the jury, what's your understanding of what's left? So other than the claims that went to the jury, the claims that are left are the Eighth Amendment claims challenging the administrative segregation conditions and the medical conditions. And I'm happy to discuss those further with the court's indulgence. So as to the administrative segregation claims, Mr. Moskos, to prove an Eighth Amendment violation, Mr. Moskos has to produce evidence, both of an injury and that the state defendants had knowledge of the injury. And here as to his conditions of administrative confinement, he has failed to do both. So as to the injury, Mr. Moskos was unable to produce any evidence on the record that he experienced an injury as a result of being placed in administrative segregation. The sole evidence that my friend on the other side cites is the investigative comments in the Prison Disciplinary Infraction Report on page 1056 of the Joint Appendix. But in those comments, Mr. Moskos states that he was placed under suicide watch. The comments don't state that he was suicidal as a result of the administrative segregation, nor in his testimony does Mr. Moskos state that he felt suicidal because of his administrative segregation. So although it's surely important... Well, first of all, what's your... what's the evidence in this record that any of the named defendants had any knowledge of this? Judge, thank you for that question. There is no evidence in the record that any of these defendants had knowledge. And my friend on the other side generally concedes this. Instead, our understanding of Mr. Moskos' claim... Wouldn't that end this claim? In our belief, it would, Your Honor. The only thing that I would add to that is that it seems as though Mr. Moskos' claim is that the state defendants knew of the unconstitutional conditions because they placed Mr. Moskos there on purpose for speaking out. But there's no evidence in the record to support this, even the circumstantial evidence to which Mr. Moskos points doesn't support that allegation. There's no causal link, for example, between the state defendants and the, you know, the alleged unconstitutional conditions under which he claims he was kept. So he's failed to both show the injury as well as... I mean, it is alleged, but your point is it's alleged in conclusory terms. It is alleged and there's no evidence to support it, which is why we went through plaintiff's presentation at trial and the court entered a directed verdict because there was no evidence to support a jury being able to find that Mr. Moskos had been able to prove both the substantive and objective grounds of the Eighth Amendment claim. All right. Now, in terms of J.G.'s question about what is left, do we have two different deliberate indifference claims? One, the deliberate indifference to a serious medical need. And secondly, the deliberate indifference to inhumane conditions. As I understand it, those two are still under challenge? Yes, Your Honor. We just spoke about the administrative conditions claim. So with your permission, I'll move on to the medical needs allegation. As to the humane conditions and administrative segregation, you're saying there's simply no involvement? Correct. There's no involvement and there's no showing of injury either. Those same two problems exist in the medical needs claim as well. Mr. Moskos failed to produce evidence that he was injured as a result of the delay in decontamination. The only evidence that my friend on the other side cites too is that Mr. Moskos claimed that his eyes were burning after the pepper spray was applied, but he produced no testimony or medical evidence to show that his eyes were burning as a result of the delay in decontamination, which is what is required here. In terms of what was resolved by the jury, and I want you to refresh my recollection here, as I understand it, the excessive force claim was resolved by the jury. That's exactly right, Judge Wilkinson. Correct. All right. Now, on the deliberate indifference to serious medical needs and the deliberate indifference to inhumane conditions, both of those, were they resolved under Rule 50? Yes. Yes, Your Honor. That's absolutely right. So, you've got the excessive force claim, which the jury resolved, and then you've got the two deliberate indifference claims to the inhumane conditions and to a serious medical need. And in both of those, you're saying that the district court got those right as a matter of law because there was no serious medical need because it was a transitory matter with respect to the pepper spray and the effects of that were all fairly quickly. And if you want to make an inhumane delay, there has to be a serious injury involved as a result of that delay. And then you're talking about the inhumane conditions and you're saying there's no involvement of the defendants. But I just wanted to make sure that we got all that procedurally correct. There's a little bit about this claim that sort of throwing it up against the wall and hoping something sticks. And so, you've answered my questions and I very much appreciate that. Let me see if I can unpack that just a little bit to provide a little bit of clarity. Sure. The initial application of the pepper spray was part of the excessive force claim that was about it as a deliberate indifference to a serious medical condition. So, that might help unpack it just a little bit there. And it was a delay in doing what? Decontaminating him with respect to the pepper spray? Yes, Judge Wilkinson. It was an alleged delay as to decontamination. The only coda that I would add to your explanation of our position is that similar to the administrative segregation issue, Mr. Moskos failed to produce evidence that the state defendants were aware of any alleged decontamination delay as well. So, there is evidence in the record that Mr. Moskos claims that three officers escorted him to a different holding area instead of decontaminating him. But there's no evidence that links those three officers as among the state defendants. Was there any serious medical event that resulted from the delay in decontamination? There's no evidence of a serious medical concern as a result of it. It's a little uncomfortable because I can't imagine that pepper spray is comfortable for anybody. But there's no evidence in the record that there was any medical concern as a result of the delay. And he was decontaminated? He definitely was decontaminated. How long was that after the pepper spray? The state defendants testified that it was about 30 to 45 minutes after the pepper spray. Mr. Moskos contends that it was one and a half to two hours, which falls well within this court's precedent of what is an appropriate time following the initial application of pepper spray to go through medical analysis. The point was with respect to, you know, the length of the delay could be a disputed issue of fact, but there's the question of whether any serious injury resulted. That's absolutely right. And there's no... That I think is a question of law or could be a question of law. That's exactly right, which is why the trial court was correct to enter a direct verdict in this instance. Even assuming a one and a half to two hour delay, that's within this court's controlling case law and precedent about what is as part of... The effects of the pepper spray wear off on their own to an extent. But it is my understanding that that's true and that there's no sort of long lasting damage as a result of a one and a half to two hour even delay in decontamination. The only other point that I would like to add to that is that it's my understanding is that Mr. Moskos is not just arguing against the delay, but also that it was done in some kind of malicious and wanton fashion by the state defendants. But again, just wanted to note that there's no evidence in the record that these state defendants delayed his decontamination in any particular way. When he's before the nurse for the second time, that clearly, if he had a complaint, that would be an opportunity to provide some water or for his eyes, although natural tears probably does something too. Was there any evidence that he complained at that point? The testimony differs on that point. The nurse testified, as did the investigative officer, that he didn't complain about it at all upon the second medical analysis. What did he say? He testified that he was not decontaminated between the first medical analysis. I understand that, but did he testify to anything he said to the nurse? He testified that he claims he told the nurse that he was not yet decontaminated, and he claims that he told the investigating officer that he was not decontaminated. In other words, the question is, did he ever testify to the nurse, say to the nurse, my eyes burn, I need to have them washed out, could you wash them out for me? He does not testify that he said, I need my eyes washed out, they haven't been decontaminated yet, as you requested. That aspect of it definitely was not part of his testimony and part of the record. Let me ask you one further question. You say the excessive force claim was resolved by the jury, and if you even, let's say just purely hypothetically, that there was an error, an evidentiary error, I assume that only arguendo, because it's a matter for the district court's discretion, but even if the disciplinary, evidences to the disciplinary proceeding was an error in some way, if that evidentiary point was an error in some way, would that affect the ultimate soundness of the jury verdict, or is it harmless? It's harmless only because the jury heard for themselves, I see that I've run out of time, may I just answer? Yeah, I want you to answer my question. The jury heard both sides of the story, the jury heard from Mr. Moscos about his version of the events, and the jury heard from the prison officials, so in our view, there's no error, because what happened before in the grievance proceeding had no effect on what the jury heard and the evidence that the jury considered. You're arguing in the alternative that there was no error, under Edwards there was no error, and even if there was an error, it was harmless under rule civil procedure 61, because the jury heard both sides of the question and got the essence of it laid out before them. As to the assault and battery and excessive force claims, yes, that's exactly right. The assault and battery and excessive force. Yes, as to the due process claims, however, Mr. Moscos failed to state a claim as a matter of law, and so he would be- That's pretty clearly an Edwards question. Yes, exactly. Okay, we thank you, and we will be glad to hear from Mr. Burton and Roberts. Thank you, your honor. I want to go back for just a minute and make one fundamental factual point. Mr. Moscos represented himself pro se through summary judgment. Judge Boyle had an opportunity to consider at summary judgment whether certain of the claims that were ultimately adjudicated on the rule 50A motion should have been dismissed as a matter of law. He decided not to dismiss the evidence that we could present on Mr. Moscos' behalf at the trial related to certain of those claims. When we talk about the Edwards decision, we're not advocating at all for a bright line rule that so long as it's a collateral challenge through a different claim, that it's permissible. We believe that Mr. Moscos' claims fall squarely within the exceptions discussed in that- What did you want to put in evidence before the juries precisely? We wanted to be able to question Officer McRae or Superintendent McRae about what he did to investigate the allegations made in Mr. Moscos' grievance and what evidence they had to support the ultimate finding that there was no substantive evidence to support Mr. Moscos' point. That got to do with the price of fish. I agree with the district court's initial reaction. I thought you were trying to say that they collaborated and fabricated evidence. You had no basis to make that argument. You had no evidence on that, did you? We had the testimony of Mr. Moscos as to what occurred that day. We had the testimony- He could testify to that. That's correct, and he did testify. I know, but I'm trying to find out what was excluded. In other words, it sounds to me like you just want to have some kind of history of what he investigated. What he investigated, if he did nothing or he did everything, none of that makes a bit of difference as to whether your client succeeds on the claims he made. Your Honor, frankly, I disagree. It does make a difference. It makes a difference because number one, the information in the grievance was entirely consistent with the story that Mr. Moscos has maintained since the very beginning of this case. It further shows an additional prison official who is working in tandem with the other offending guards to prevent Mr. Moscos from being able to exercise his due process rights and have a circumstance to be investigated. All right, well, granted, but these evidentiary rulings are within the discretion of the district court, and at a very minimum, at a minimum, Edwards would be- the district court was entitled to rely on Edwards to inform its discretion. We just can't reduce the case to irrelevance, and to my mind, Edwards says you don't use 1983 suits as a vehicle to re-litigate, in a 1983 context, disciplinary proceedings that have not been ruled invalid. And there are other ways to go at the disciplinary proceedings, and he never availed himself of those. But the Edwards decision says what it says, and you may quarrel with the discretionary ruling, Edwards would be available to inform that discretion, particularly when you've got a case before the jury where the essential evidence was introduced on both sides. The jury, you know, plaintiff says this is my story, and the defendant says this is my story, and it's, you know, it comes down to one of these credibility matters. Your Honor, if I may respond just very briefly. Very briefly, yes. Again, the Edwards decision, as well as the cases that follow Edwards, speak about the concept that it's only impermissible when it seeks to invalidate the underlying punishment. We are not seeking to invalidate the underlying punishment that Mr. Mosca has received. We're simply asking this court to take a full-scale, totality-of-the-circumstances view of the evidence presented in the case, and we believe that the only way that the court can grant the Rule 50 motion is to decide which version of events he believed based on the evidence presented. That's the function of the jury. The jury's function was usurped by Judge Boyle in his ruling, and we believe that that's reversible error. All right. Thank you. Thank you. All right. I wanted to say that we appreciate both of your arguments. We can't come down and greet you because of circumstances that are obvious to us all, but I really do appreciate both of the presentations.
judges: J. Harvie Wilkinson III, Paul V. Niemeyer, G. Steven Agee